IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LATOSHA DONABY<br><br>Plaintiff,<br><br>v.<br><br>MERCY HOSPITALS EAST COMMUNITIES,<br>d/b/a MERCY HOSPITAL ST. LOUIS,<br><br>Defendant. | Civil Action No.<br><br>JURY TRIAL DEMANDED |

**VERIFIED COMPLAINT FOR DAMAGES**

COMES NOW, LaTosha Donaby ("Plaintiff" or "Ms. Donaby"), by and through her undersigned counsel, and files this, her Complaint for Damages against Mercy Hospitals East Communities, d/b/a Mercy Hospital St. Louis ("Defendant"), and shows the Court as follows:

**NATURE OF COMPLAINT**

1.

Plaintiff brings this action for damages, liquidated damages, and reasonable attorney fees for Defendant's violation of her rights under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et. seq*. ("FMLA").

**JURISDICTION AND VENUE**

2.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. § 12117, and 29 U.S.C. § 261(b).

3.

Defendant does business in this judicial district. Additionally, the unlawful employment practices alleged in this Complaint were committed within this district. In accordance with 28 U.S.C. § 1391, venue is appropriate in this Court.

**PARTIES**

4.

Plaintiff is a citizen of the United States of America and a resident of the State of Missouri. Plaintiff is subject to the jurisdiction of this Court.

5.

Defendant is a non-profit corporation qualified and licensed to do business in Missouri, and at all times material hereto has conducted business within this District.

6.

Defendant may be served with process by delivering a copy of the summons and complaint to its Registered Agent, CSC- Lawyers Incorporating Service Company, located at 22 Bolivar St., Jefferson City, MO 65101.

7.

Plaintiff is considered an "eligible employee" within the meaning of the FMLA, 29 U.S.C. §2601 *et seq*.

8.

Defendant is an "employer" within the meaning of the FMLA, 29 U.S.C. §2601 *et seq*, which includes a "successor in interest."

9.

Plaintiff worked at least 1250 hours for Defendant within the 12 months preceding her request for medical leave pursuant to the FMLA.

10.

Plaintiff was employed by Defendant for more than twelve (12) months.

11.

Plaintiff was employed by Defendant at a worksite with 50 or more employees within 75 miles of that worksite.

**<u>FACTUAL ALLEGATIONS</u>**

12.

Defendant hired Plaintiff on or about April 2022, as a Medical Assistant in the Central Insurance Authorization department in a full-time role.

13.

Plaintiff took FMLA leave from November 20, 2023 until February 11, 2024, and Mercy Hospital allowed Plaintiff to take additional medical leave until she returned on June 10, 2024.

14.

Defendant was well aware of Plaintiff's medical conditions and need for accommodation due to her first FMLA leave.

15.

While Plaintiff was on medical leave, she requested a new position that would allow her to work remotely. On April 19, 2024, she accepted a role as a Patient Benefit Representative II in the centralized scheduling department, which she began upon returning from leave on June 10, 2024.

16.

On or about July 17, 2024, Plaintiff informed her supervisor, Ms. Sala Poindexter, that she needed to go to the emergency room. Plaintiff then spent the day and all night at the emergency room seeking care.

17.

While at the emergency room, Plaintiff was given a CT scan by the attending physician and was scheduled for a follow up CT scan the next week on July 16, 2024.

18.

The next morning, after spending the night at the hospital, Ms. Donaby informed Ms. Poindexter of her circumstances at the ER as well as the scheduled CT scan for July 26, 2024.

19.

Plaintiff requested time off to attend the July 26, 2024 CT scan appointment, but Ms. Poindexter denied the request for time off.

20.

Ms. Donaby chose to attend the appointment anyway in order to prioritize her health and ensure that she could continue to receive medical care. Upon returning from her appointment, Plaintiff noticed that her absence appeared in the system as "unexcused." Ms. Poindexter told Plaintiff that she was not given 24-hour notice in advance, even though Ms. Poindexter had already rejected Plaintiff's prior request to take off work to attend her medica appointment.

21.

After Ms. Donaby asserted her need to prioritize her personal, she was subjected to disciplinary action that continued into a pattern of discriminatory and retaliatory behavior by Defendant.

22.

Plaintiff was not supported in her role transitions or in her medical needs. Instead, Defendant escalated punitive actions. Even though Ms. Donaby expressed multiple times she was not being adequately trained, management at Defendant continued to provide inconsistent and inadequate training. Management also moved Ms. Donaby to a new role, all the while criticizing Plaintiff's work.

23.

In emails to Plaintiff, Ms. Donaby was instructed to neglect watching training videos so that she could get started with tasks. In another email, she was criticized for not watching the videos faster, even though she was not given adequate time to watch and study them. In other emails, Ms. Donaby expressed the need for help learning a new task, since no one had ever taught her how to do a critical function of her role.

24.

On July 24, at her 45-day evaluation for her new job, Plaintiff was still in the learning process for new hires, and the evaluation's stated purpose was to show management how they can best support Plaintiff's continued learning and growth.

25.

On August 2, 2024, at a coaching meeting, Plaintiff expressed that she did not feel as though she was receiving adequate training, she was reviewing the notes and teaching she had received, and that she wanted to be good at her job.

26.

The agreed upon plan for Plaintiff following the August 2, 2024 meeting was for Plaintiff to repeat department training, starting August 5, 2024, with daily reviews and weekly follow-up. This supports Plaintiff's claim that she was not receiving adequate training prior to her termination.

27.

Defendant's policy handbook states that co-workers who are new to a workflow will be given 90 days to reach acceptable productivity.

28.

However, Plaintiff was less than two months into her new role, which started on June 10, 2024, when she started receiving discipline for lack of productivity.

29.

Plaintiff was given a Final Written Warning on August 16, 2025, well within the 90 day window for her new role.

30.

Plaintiff also reported that she had been told by HR Consultant Michele Smith that Ms. Poindexter, Ms. Winn, and HR at Defendant had already been communicating to Ms. Smith about Plaintiff.

31.

Throughout these events occurring, the adverse treatment towards Plaintiff by Defendant was witnessed by others working at Defendant. A trainer who was a part of the team in charge of teaching Plaintiff how to perform her job, Ms. Jenny Moore, both observed Ms. Poindexter's behavior towards Plaintiff as well as was told by Ms. Poindexter not to speak to or assist Plaintiff. Ms. Poindexter contacted Ms. Moore after hours on her personal cell phone to instruct her not to speak or train Plaintiff any further.

32.

There was a clear pattern of behavior from Defendant that shows intent to set up Ms. Donaby for failure in order to acquire a pretextual reason to terminate Plaintiff's employment as cover for discrimination and retaliation.

33.

In response to the adverse treatment Plaintiff experienced, she attempted to communicate her concerns to Ms. Sheila Winn, the Executive Director of Patient Access at the Hospital.

34.

Ms. Winn dismissed Ms. Donaby's concerns and suggested that, perhaps, the position that Ms. Donaby worked in was not the best one for her, even though Plaintiff had communicated concerns about bullying, harassment, discrimination, retaliation, inadequate training, denial of time to attend medical appointments, and obvious attempts to set her up for failure after her medical leave.

35.

In early August 2024, Plaintiff informed management at Defendant that she would be taking additional FMLA leave in order to have a surgery which was scheduled for August 31, 2024.

36.

Just days before her FMLA leave was to begin, which Defendant had notice of in advance, Defendant re-assigned Plaintiff to a new workflow with only two days of training. Despite her impending absence, management set expectations that Plaintiff complete training and achieve productivity targets. This new role, short

training time, and expectations for training and productivity, made impossible by Plaintiff's impending FMLA leave, ensured that Plaintiff would be unable to succeed in her new role.

37.

Plaintiff went on FMLA leave on August 31, 2024.

38.

While on FMLA leave, Plaintiff was contacted by Ms. Smith to discuss a previous internal complaint that Plaintiff had filed. Ms. Smith called Plaintiff in the evening while Plaintiff was with her family, in an effort to close the outstanding internal complaint without proper investigation or follow-up.

39.

Plaintiff returned from FMLA leave on October 16, 2024, and she was immediately subjected to heightened scrutiny for training and productivity targets, despite having only two working days of training prior to her FMLA leave.

40.

Plaintiff continued to raise concerns with HR about the retaliatory conduct and unresolved complaints after her return from FMLA leave and the increased scrutiny on her performance.

41.

On one occasion, when Plaintiff was able to schedule a call with HR, she was told that they could not hear her, despite clear evidence that the technology of all parties was working adequately. Despite the claimed technological issue, HR never followed up with Plaintiff or attempted to schedule another call.

42.

On November 17, 2024, Plaintiff formally complained of retaliation for taking FMLA leave.

43.

On November 19, 2024, just two days after her complaint was filed, weeks after Plaintiff's return from FMLA leave, and less than 90 days into her new role at Defendant, Plaintiff was terminated by Defendant. Her separation letter cited "corrective action and productivity" as the reason for Plaintiff's termination, despite Plaintiff's documented complaints, lack of accommodations, and insufficient and inconsistent training.

44.

Plaintiff has suffered both economically and emotionally. She lost a full-time position with benefits and has been unable to achieve similar employment since her

termination. She experiences migraines, insomnia, and anxiety directly tied to her treatment at work.

45.

Defendant also terminated Plaintiff because she had a record of a disability or because it regarded her as disabled.

46.

Defendant retaliated against Plaintiff for taking FMLA leave by terminating her employment instead of other employees with less seniority.

47.

Although Defendant purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pre-text.

48.

Others outside the Plaintiff's protected class were treated differently.

## **CLAIMS FOR RELIEF**

## **COUNT I: FMLA INTERFERENCE**

49.

Plaintiff re-alleges the preceding paragraphs 127-48 as if set forth fully herein.

50.

Defendant is an 'employer' as defined by the FMLA.

51.

Plaintiff was an eligible employee under the FMLA.

52.

Plaintiff worked at least 1250 hours for Defendant within the 12 months preceding her request for medical leave pursuant to the FMLA.

53.

Plaintiff was employed by Defendant for more than 12 months.

54.

Plaintiff was employed by Defendant at a worksite with 50 or more employees within 75 miles of that worksite.

55.

Because Plaintiff was an eligible employee, Plaintiff was entitled to medical leave and other protections pursuant to the FMLA, 29 U.S.C. § 2601, et seq.

56.

Plaintiff had a medical condition that required Plaintiff to take time off of work.

57.

Plaintiff had a serious medical condition as defined by the FMLA.

58.

Defendant received notice of Plaintiff's need for protected medical leave for her own medical condition on or about November, 2023 for her first FMLA leave and August, 2024 for her second FMLA leave.

59.

Defendant terminated Plaintiff's employment to avoid having to accommodate Plaintiff's respective rights to protected medical leave.

60.

Defendant interfered with rights protected under the Family Medical Leave Act, 29 U.S.C. § 2601, et seq., entitling Plaintiff to all appropriate relief under the statute.

61.

The effect of Defendant's actions has been to deprive Plaintiff of a job, as well as income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits due to her solely because of her right to leave under the FMLA.

62.

As a result, Plaintiff is entitled to both equitable and monetary relief for Defendant's violation of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B)

– including, but not limited to, back pay, front pay or reinstatement, attorneys' fees and costs of litigation.

**COUNT II: FMLA RETALIATION**

63.

Plaintiff re-alleges the preceding paragraphs 12-48 as if set forth fully herein.

64.

Defendant is an 'employer' as defined by the FMLA.

65.

Plaintiff was an eligible employee under the FMLA.

66.

Plaintiff worked at least 1250 hours for Defendant within the 12 months preceding her request for medical leave pursuant to the FMLA.

67.

Plaintiff was employed by Defendant for more than 12 months.

68.

Plaintiff was employed by Defendant at a worksite with 50 or more employees within 75 miles of that worksite.

69.

Because Plaintiff was an eligible employee, Plaintiff was entitled to medical leave and other protections pursuant to the FMLA, 29 U.S.C. § 2601, et seq.

70.

Plaintiff had a medical condition that required Plaintiff to take time off of work twice, from November 20, 2023 to February 11, 2024, and from August 31, 2024 to October 16, 2024.

71.

Plaintiff had a serious medical condition as defined by the FMLA.

72.

Defendant received notice of Plaintiff's need for protected medical leave for her own medical condition on or about November 2023 for her first leave, and August, 2024 for her second leave.

73.

Defendant terminated Plaintiff's employment to avoid having to accommodate Plaintiff's respective rights to protected medical leave.

74.

Defendant's termination of Plaintiff's employment was causally related to her attempt to exercise her rights to protected medical leave pursuant to the FMLA.

75.

Defendant's termination of Plaintiff's employment for alleged corrective action and productivity constitutes unlawful retaliation against Plaintiff for her attempt to exercise her rights to protected medical leave under the FMLA, in violation of 29 U.S.C. §2615(a).

76.

As a direct and proximate result of Defendant's unlawful retaliation against Plaintiff, Plaintiff has been damaged and is entitled to the relief set forth in the Prayer for Relief below.

**WHEREFORE**, Plaintiff judgment as follows:

(a) A declaratory judgment that Defendant has engaged in unlawful employment practices in violation of the FMLA;

(b) Injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant from further unlawful conduct of the type described herein;

(c) General damages for mental and emotional suffering caused by Defendant's misconduct;

(d) Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

(e) Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon;

(f) Back pay and reasonable attorney's fees and expenses of litigation with any and all other costs associated with this action as provided by the FMLA;

(g) Trial by jury as to all issues;

(h) Prejudgment interest at the rate allowed by law; and

(i) All other relief to which she may be entitled.

Respectfully submitted the 16th day of November, 2026.

**BARRETT & FARAHANY**

*s/ Alan G. Crone*
Alan G. Crone, MO Bar No. 73285
acrone@justiceatwork.com

*Attorney for LaTosha Donaby*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LATOSHA DONABY<br><br>Plaintiff,<br><br>v.<br><br>MERCY HOSPITALS EAST COMMUNITIES,<br>d/b/a MERCY HOSPITAL ST. LOUIS,<br><br>Defendant. | Civil Action No.<br><br>JURY TRIAL DEMANDED |

**DECLARATION AND VERIFICATION**

I, **Latosha Donaby**, verify and declare that the facts stated in the foregoing Verified Complaint to the best of my knowledge and belief are true, and that the Complaint is not made out of levity or by collusion with the Defendant, but in sincerity and truth for the causes mentioned in the Complaint.

Dated: November 16, 2026

LaTosha Donaby (Nov 16, 2026 11:31:00 CST)
Latosha Donaby

11/16/2026
Date